**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

UNITED STATES OF AMERICA,

    **Plaintiff**,

        **v.**              **Criminal No.** 15-346 (FAB)

JOSE CENTENO-GONZALEZ,

    **Defendant**.

**OPINION AND ORDER**

BESOSA, District Judge.

    Before the Court is defendant Jose Centeno-Gonzalez ("Centeno")'s motion to suppress both a statement he made and physical evidence seized from the vehicle he was driving before being arrested. (Docket No. 39.) The United States opposed the motion, (Docket No. 44), and the Court referred the matter to Magistrate Judge Marcos E. Lopez, (Docket Nos. 40-41).

    The magistrate judge held a two-day hearing, during which the United States and defendant Centeno presented evidence. (Docket No. 53-54.) The magistrate judge then issued a Report and Recommendation ("R & R"), recommending that the motion to suppress be denied with respect to Centeno's statement but granted with respect to the physical evidence. (Docket No. 59.) The United States objected to the R & R. (Docket No. 64.) Defendant Centeno did not file an objection or a response to the United States' objection. <u>See</u> Docket Nos. 69-70.

For the reasons discussed below, the Court **ADOPTS IN PART** and **REJECTS IN PART** the magistrate judge's R & R, (Docket No. 59), and **DENIES in its entirety** defendant Centeno's motion to suppress, (Docket No. 39).

## I.   STANDARD OF REVIEW

A district court may refer a motion to suppress evidence in a criminal case to a magistrate judge for a report and recommendation.  28 U.S.C. § 636(b)(1)(B); Loc. R. 72(a)(6).  Any party may file written objections to the report and recommendation, and a party that files a timely objection is entitled to a *de novo* determination of those portions of the report to which specific objection is made.  28 U.S.C. § 636(b)(1); Loc. R. 72(d).  In conducting its review, the Court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1); accord Loc. R. 72(d).

## II.   FINDINGS OF FACT

The magistrate judge issued recommended findings of facts based on evidence presented during the two-day hearing.  See Docket No. 59 at pp. 2-5.  Neither defendant Centeno nor the United States objected to the magistrate judge's factual findings.  See Docket No. 64 at p. 2 (stating explicitly that the United States has no objection to the recommended findings of fact).  The Court therefore **ADOPTS** the magistrate judge's factual findings, (Docket No. 59 at pp. 2-5), and summarizes them as follows.

On May 6, 2015, Juncos Municipal Police Department ("JMPD") Agent Maria Sanabria-Sanabria ("Sanabria") received two anonymous calls.  Between 6:40 and 6:45 p.m., the first caller stated that while she was entering her home in Estancias de la Ceiba, an urbanization[1] in Juncos, she saw a man up the street get out of a white Toyota Tundra with tinted windows and deliver firearms to a grey vehicle.  The grey vehicle then moved farther up the street, and two individuals got out and began shooting someone.  Agent Sanabria heard the gunshots while on the phone with the caller and reported the details of the call to JMPD agents over the police radio.  JMPD Agents Nilka Figueroa ("Figueroa") and Luis Rosa-González ("Rosa") heard the radio call and proceeded to Estancias de la Ceiba.  After Agent Sanabria told the caller to get away from the windows, the call disconnected.

Agent Sanabria then received a second call.  This caller, whose voice was different than the first caller's, requested an ambulance.  She reported that one person was dead and another was injured because a white Toyota Tundra had run someone over.  The caller stated that the Tundra left towards Juncos and that a grey vehicle left towards Las Piedras.  Sanabria informed her fellow JMPD agents.

---

[1] Gated communities are called "urbanizations" in Puerto Rico.  See Watchtower Bible & Tract Soc. of New York, Inc. v. Colombani, 712 F.3d 6, 8 (1st Cir. 2013).

Two to four minutes after receiving the first radio communication, while they were on their way from Juncos to Estancias de la Ceiba, Agents Figueroa and Rosa saw a white Toyota Tundra with tinted windows.  They followed the vehicle to pull it over.

Puerto Rico Police Department ("PRPD") Agents Carlos Calderón ("Calderón") and Elvin Adams ("Adams") also received information that gunshots were heard in Estancias de la Ceiba.  While on their way to that urbanization, PRPD Agents Calderón and Adams saw the JMPD agents following the Toyota Tundra, and they joined the pursuit.

The Toyota Tundra stopped on the side of the road.  Agents Figueroa and Rosa approached the vehicle with guns drawn.  Agent Rosa told the vehicle's driver to turn off the engine and roll down the window.  The driver, later identified as defendant Centeno, did not comply until at least one minute later by lowering his window halfway.  Agent Rosa told Centeno to open the door, and he complied.  Centeno appeared "nervous and sweaty" and, after being asked where he was coming from, stated that he was coming from Estancias de la Ceiba where he was looking for a house to rent. Centeno was then ordered to the ground, handcuffed, read Miranda rights, and told he was under arrest for the incident that occurred

in Estancias de la Ceiba.[2]  Centeno was placed in a patrol car and made no further statement.

Agents Figueroa and Rosa then drove to Estancias de la Ceiba, which was no more than ten minutes away.  There, they saw many people standing outside a residence.  Inside the residence, the agents saw a dead person lying on the floor covered with blood and full of bullet holes.  Ten to thirty minutes later, Agent Rosa returned to where the Toyota Tundra was stopped and told his fellow law enforcement officers what he had seen in Estancias de la Ceiba. Around 7:45 p.m., officers called a canine unit to report to the scene of the intervention.

Between 8:10 and 8:15 p.m., PRPD Agent Jorge Feliciano ("Feliciano") arrived at the scene with his duly certified firearms-detection dog.  Agent Feliciano took the dog around the exterior of the Toyota Tundra, and the canine alerted for firearms at the driver's and front passenger's doors.

Two hours later, the Toyota Tundra was sealed and towed to the command post in Caguas.  The next day, agents secured a warrant to

---

[2] The magistrate judge noted a difference in Figueroa's and Calderón's timelines of this fast-paced encounter.  Specifically, Figueroa testified that <u>before</u> Centeno was on the ground and handcuffed, he stated that he was coming from Estancias de la Ceiba.  Calderón testified that Centeno made this statement <u>after</u> he was on the ground and handcuffed.  After carefully considering all the testimony, the magistrate judge credited Figueroa's version "because it was the most consistent and had the most specificity regarding the timing." (Docket No. 59 at p. 28.)  Neither party objected to this credibility determination.  The Court therefore accepts the magistrate judge's factual finding that Centeno made his statement before being ordered to the ground and handcuffed.

search the Toyota Tundra.  During the search, agents found and seized a Glock pistol, ammunition, and cocaine.

### III.  MOTION TO SUPPRESS, RECOMMENDATIONS, AND OBJECTIONS

Defendant Centeno moves to suppress both the statement he made when he was stopped (that he was coming from Estancias de la Ceiba where he was looking for a house to rent) and the items seized from the Toyota Tundra (the gun, ammunition, and cocaine).  (Docket No. 39.)  In support of his motion, Centeno argues (1) that he is entitled to a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978), to challenge the affidavit that supported the search warrant; (2) that officers did not have reasonable suspicion to stop the Toyota Tundra; and (3) that the dog sniff was an unconstitutional search.  (Docket No. 39.)

The magistrate judge recommended that the motion to suppress be denied with respect to Centeno's statement but granted with respect to the items seized from the Toyota Tundra.  (Docket No. 59.)  The magistrate judge based his recommendations on the following legal conclusions:

1.  Centeno failed to meet his burden of making a substantial preliminary showing to entitle him to a Franks hearing.  (Docket No. 59 at pp. 5-6.)

2.  Centeno failed to meet his burden of showing that the officers conducted a warrantless search of the Toyota Tundra by rolling down its windows at the scene of the intervention.  Id. at pp. 29-31.

3.  The investigatory stop of the Toyota Tundra was constitutional because it was supported by reasonable suspicion.  Id. at pp. 7-12.

4.   Officers did not violate the Fifth Amendment because they were not required to give Centeno <u>Miranda</u> warnings before he made a statement.  <u>Id.</u> at pp. 26-29.

5.   Centeno's arrest was unconstitutional because it was not supported by probable cause.  <u>Id.</u> at pp. 12-26.

6.   The dog sniff was unconstitutional because it was not supported by probable cause.  <u>Id.</u> at pp. 38-41.

7.   The items seized from the Toyota Tundra were the fruit of Centeno's unconstitutional arrest and of the unconstitutional dog sniff.  <u>Id.</u> at pp. 31-41.

Neither party objected to legal conclusions 1-4 above.  After independently examining the record and applicable law, the Court **ADOPTS** the first four recommended legal conclusions.

The United States objects to legal conclusions 5-7 and to the recommendation that the items seized from the Toyota Tundra be suppressed.  Specifically, the United States makes the following legal arguments:

1.   That Centeno did not meet his burden of establishing that he had a reasonable expectation of privacy in the Toyota Tundra.  (Docket No. 64 at pp. 9-10.)

2.   That officers had probable cause to arrest Centeno. <u>Id.</u> at pp. 23-27.

3.   That the items seized from the Toyota Tundra were not the fruit of Centeno's arrest but rather of the lawful investigatory stop.  <u>Id.</u> at pp. 10-13.

4.   That the dog sniff was not a search requiring probable cause.  <u>Id.</u> at pp. 17-19.

5.   That the dog alert and the items seized from the Toyota Tundra were not the fruit of Centeno's arrest because the dog sniff and warrant-based search were sufficiently attenuated from the arrest.  <u>Id.</u> at pp. 13-16.

6.    That the search warrant was properly based on the state judge's probable cause determination, and that the officers were entitled to rely on that warrant in good faith.  Id. at pp. 19-23.

7.    That suppression would not serve the purpose of the exclusionary rule because the officers did not act in bad faith.  Id. at pp. 7-9.

The Court is persuaded by many of the United States' arguments and will now proceed to conduct its own Fourth Amendment analysis to determine whether suppression is warranted.

## IV.  DISCUSSION

The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures." U.S. Const. amend. IV.  This prohibition is enforced through the exclusionary rule, pursuant to which evidence seized in violation of a defendant's Fourth Amendment rights cannot be used against the defendant at trial.  Herring v. United States, 555 U.S. 135, 139 (2009).  "[T]he exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, . . . but also evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.'"  Segura v. United States, 468 U.S. 796, 804 (1984) (internal citations omitted).

Defendant Centeno moves to suppress his statement and the gun, ammunition, and cocaine seized from the Toyota Tundra as fruit of Fourth Amendment violations.

## A.   Centeno's Statement

After officers stopped defendant Centeno, they asked him where he was coming from.  He responded by stating that he was coming from Estancias de la Ceiba where he was looking for a house to rent.  Centeno moves to suppress this statement as fruit of the unconstitutional investigatory stop of the Toyota Tundra.  (Docket No. 39 at pp. 7-12.)  The magistrate judge found that the investigatory stop was constitutional because it was supported by reasonable suspicion, (Docket No. 59 at pp. 7-12), and the Court adopted that recommendation without objection from Centeno, supra Part III.  Furthermore, Centeno made his statement before he was ordered to the ground, handcuffed, read Miranda rights, and told he was under arrest.  Therefore, his statement is not the fruit of his arrest, regardless of whether the arrest was constitutional, because only evidence discovered after a constitutional violation can be fruit of that violation.  See Segura, 468 U.S. at 804.

The Court therefore holds that Centeno's statement is not the fruit of a Fourth Amendment violation.  Nor was his statement obtained in violation of the Fifth Amendment.  See Docket No. 59 at pp. 26-29; supra Part III.  The Court accordingly **ADOPTS** the magistrate judge's recommendation to deny suppression of Centeno's statement.

## B.   The Gun, Ammunition, and Cocaine

Officers seized a gun, ammunition, and cocaine from the Toyota Tundra pursuant to a search warrant.  The magistrate judge

concluded that this evidence was fruit of two Fourth Amendment violations - Centeno's arrest and the dog sniff.   The Court will discuss each in turn after addressing a threshold issue.

### 1.   Centeno's Reasonable Expectation of Privacy in the Toyota Tundra

As a threshold requirement in moving to suppress evidence pursuant to the Fourth Amendment, the defendant carries the burden of establishing "that he or she had a reasonable expectation of privacy in the area searched or the items seized."[3]  United States v. Symonevich, 688 F.3d 12, 18 n.3 (1st Cir. 2012).  "[F]ailure to present evidence with respect to such an expectation prevents a defendant from making a claim for suppression under the Fourth Amendment."  United States v. Samboy, 433 F.3d 154, 162 (1st Cir. 2005).

In the context of a vehicle search, there is no bright-line rule to determine whether the defendant had a reasonable expectation of privacy in the vehicle.  United States v. Almeida, 748 F.3d 41, 47 (1st Cir. 2014).  Instead, the First Circuit Court of Appeals considers the following factors:  "ownership, possession, and/or control; historical use of the property searched or the thing seized; ability to regulate access; the totality of

---

[3] Courts and parties frequently refer to this threshold requirement as one of "standing."  See, e.g., United States v. Symonevich, 688 F.3d 12, 18-21 (1st Cir. 2012).  The United States Supreme Court has noted, however, that the analysis is "more properly placed within the purview of substantive Fourth Amendment law than within that of standing."  United States v. Lipscomb, 539 F.3d 32, 36 (1st Cir. 2008) (quoting Minnesota v. Carter, 525 U.S. 83, 88 (1998)).

the surrounding circumstances; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of such an expectancy under the facts of a given case." Id. (quoting United States v. Aguirre, 839 F.2d 854, 856-57 (1st Cir. 1988)).

The First Circuit Court of Appeals applied these factors in United States v. Sanchez, where the defendant was driving a vehicle without direct permission from its owner. 943 F.2d 110, 114 (1st Cir. 1991). The court reasoned that the defendant's possession of the vehicle, "his ability as the sole occupant to control or exclude others' use," and "the fact that he was driving alone on a long trip" weighed in favor of finding that the defendant had a reasonable expectation of privacy in the vehicle. Id. at 113. These facts were outweighed, however, by the defendant's lack of ownership and a lack of evidence that he used the vehicle on other occasions or had a close relationship with the vehicle's owner. Id. at 114. The court therefore held that the defendant failed to establish that he had a reasonable expectation of privacy in the vehicle to entitle him to challenge its search. Id.

Here, the magistrate judge did not consider whether defendant Centeno had a reasonable expectation of privacy in the Toyota Tundra. Furthermore, the magistrate judge's factual findings, based on evidence presented during a two-day hearing, lack facts necessary for the Court to make this determination.

Although Centeno was driving the Toyota Tundra and was its sole occupant when officers pulled it over, it is unknown whether Centeno owned the Toyota Tundra, had permission from its owner to drive it, or drove it on other occasions.   There is also no indication that Centeno claimed an ownership interest in the seized gun, ammunition, or cocaine.

The United States acknowledges that it failed to raise this issue before the magistrate judge.  (Docket No. 64 at p. 9.) In its objections to the magistrate judge's R & R, the United States alleges, however, that Centeno was not the registered owner of the Toyota Tundra.  Id. at p. 10.  Centeno did not respond to this allegation.

If this issue were critical to ruling on Centeno's motion to suppress, the Court would re-open the hearing to give Centeno the opportunity to establish that he had a reasonable expectation of privacy in the Toyota Tundra.   Because the Court ultimately denies the motion to suppress on the merits, however, re-opening the hearing for this threshold issue would be futile.  See Combs v. United States, 408 U.S. 224, 226-28 (1972); United States v. Pervaz, 118 F.3d 1, 5 (1st Cir. 1997) ("If the privacy question was vital, we would, at the very least, remand to the district court for factual findings.  Because, however, it is not, we will assume [that the defendant had a reasonable expectation of privacy] for purposes of this appeal.").  The Court assumes that Centeno had a reasonable expectation of privacy in the Toyota Tundra and proceeds

to analyze whether its search violated Centeno's Fourth Amendment rights.

### 2.   Centeno's Arrest

The magistrate judge concluded that Centeno's arrest violated the Fourth Amendment because it was not supported by probable cause. (Docket No. 59 at pp. 19-26.) The magistrate judge then recommended suppressing the gun, ammunition, and cocaine seized from the Toyota Tundra as fruit of the poisonous tree pursuant to the following chain of causation: the unconstitutional arrest tainted the dog alert, the dog alert tainted the warrant affidavit, the affidavit tainted the warrant, and the warrant tainted the seizure of the evidence discovered in the Tundra. Id. at pp. 31-38.

The Fourth Amendment's prohibition against unreasonable seizures requires that arrests be based on probable cause. Beck v. Ohio, 379 U.S. 89, 91 (1964). "Probable cause for an arrest 'exists when the arresting officer, acting upon apparently trustworthy information, reasonably concludes that a crime has been (or is about to be) committed and that the putative arrestee likely is one of the perpetrators.'" United States v. Brown, 500 F.3d 48, 56 (1st Cir. 2007) (quoting Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 9 (1st Cir. 2004)). The probable cause analysis focuses on the collective knowledge of all officers at the time of the arrest and considers the totality of the circumstances. See United States v. Jones, 432 F.3d 34, 41 (1st Cir. 2005); United States v.

Paradis, 802 F.2d 553, 557 (1st Cir. 1986).  Officers' probable
cause determination need not be "ironclad, or even highly probable.
Their conclusion that probable cause exists need only be
reasonable."  United States v. Winchenbach, 197 F.3d 548, 555-56
(1st Cir. 1999); accord Valente v. Wallace, 332 F.3d 30, 32 (1st
Cir. 2003) ("[C]entrally, the mercurial phrase 'probable cause'
means a reasonable likelihood.").

     Here, based on the first anonymous call, it was
reasonable for officers to believe that criminal activity had
occurred at Estancias de la Ceiba.  The first caller reported to
Agent Sanabria that she saw a man get out of a white Toyota Tundra
with tinted windows and deliver firearms to a grey vehicle.  She
then watched the grey vehicle move farther up the street and saw
two individuals get out and begin shooting someone.  This
information was reliable not only because it was "contemporaneous
with the observation of criminal activity [and] made under the
stress of excitement caused by a startling event," see Navarette v.
California, 134 S. Ct. 1683, 1689, (2014), but also because Agent
Sanabria herself heard the gunshots over the phone.  Thus, it was

reasonable for officers to believe that a firearms-related crime[4]
had been committed at Estancias de la Ceiba.

It was also reasonable for officers to believe, at the
time they arrested Centeno,[5] that he was a perpetrator of the
criminal activity at Estancias de la Ceiba.   First, the two
anonymous callers gave detailed descriptions matching Centeno's
vehicle.   Both callers reported that someone in a white Toyota
Tundra was involved in criminal activity.   This description matches
the exact color, make, and model of the vehicle Centeno was
driving.   Furthermore, the first caller described the white Toyota
Tundra as having tinted windows and its occupant as a man.
Centeno's Tundra had tinted windows, and Centeno, its sole
occupant, was male.   "Probability is the touchstone" of the
probable cause determination.   United States v. Fiasconaro, 315
F.3d 28, 35 (1st Cir. 2002) (quoting United States v. Figueroa, 818

---

[4] For example, it was reasonable to believe that the individuals in the
grey vehicle committed a number of crimes by shooting someone, and that
the man in the Tundra was an abettor to those crimes by giving the
perpetrators firearms just moments before.   See P.R. Laws Ann. tit. 25
§ 458n (making it a felony to willfully fire a weapon in a public place
or intentionally point a weapon at a person); id. tit. 33 § 4750
(criminalizing aggravated battery); id. § 4671 (considering as a
principal a person who abets another person to commit a crime).   It was
also reasonable for officers to believe that the man in the white Toyota
Tundra violated Article 5.09 of the Puerto Rico Weapons Act by
transferring firearms to individuals in the grey vehicle moments before
those individuals shot someone.   See id. tit. 25 § 458h ("Any person who
with criminal intent, furnishes or makes available to another person any
firearm that has been under his/her custody or control, whether or not
he/she is the proprietor thereof, shall be guilty of a felony . . . .").

[5] The Court considers the time of arrest to be when Centeno was
handcuffed, read Miranda rights, and told he was under arrest.

F.2d 1020, 1023 (1st Cir. 1987)).  Had the callers' descriptions been more general, like a "white truck," the probability that Centeno was the perpetrator would have been appreciably lower because there are more white trucks than white Toyota Tundras with tinted windows.  It was reasonable for officers to believe that a vehicle matching the exact color, make, model, and accessorization of the callers' description was in fact the perpetrator's vehicle.

        Second, the close temporal and geographic proximity between the criminal activity and the stop of Centeno's vehicle supports officers' probable cause determination.  Agent Sanabria reported the details of the first call to Agents Figueroa and Rosa while she was still on the phone with the first caller, who described the criminal activity as it unfolded at Estancias de la Ceiba.  Figueroa and Rosa drove towards Estancias de la Ceiba and saw the white Toyota Tundra with tinted windows within two to four minutes of receiving the report.  The Tundra was on the anticipated route, as the second caller reported that the Tundra was headed towards Juncos, and Figueroa and Rosa were coming from Juncos. After the stop, it took officers less than ten minutes to drive to Estancias de la Ceiba from the scene of the stop.  Had officers driven for hours before seeing a white Toyota Tundra, or had they discovered it several miles from Estancias de la Ceiba, the probability that Centeno was the perpetrator would have been lower. It was reasonable for officers to believe that a white Toyota Tundra with tinted windows stopped within minutes of the reported

crime and less than a ten-minute drive from the scene of the criminal activity was the perpetrator's vehicle.

Third, Centeno's behavior, demeanor, and verbal admission when he was stopped supported officers' probable cause determination. When officers ordered Centeno to turn off the engine and roll down the window, he did not comply until at least one minute later, and even then, he rolled the window down only halfway. Centeno appeared "nervous and sweaty" and admitted that he was coming from Estancias de la Ceiba, the very place where the criminal activity was reported.

Considering the totality of the circumstances when officers arrested Centeno, there was a reasonable likelihood that he had committed a firearms-related crime at Estancias de la Ceiba because his vehicle perfectly matched the callers' descriptions, officers intercepted him within minutes of the crime near the location of the shooting, driving towards Juncos as the caller had reported, his statement confirmed his presence near that location, and his behavior was suspect. Officers therefore had probable cause to arrest him. This does not suggest that this evidence would suffice to sustain a conviction. Probable cause, however, does not require "evidence sufficient to convict the individual, but merely enough to warrant a reasonable belief that he was engaging in criminal activity." Jones, 432 F.3d at 43 (quoting United States v. Link, 238 F.3d 106, 110 (1st Cir. 2001)).

The Court therefore **REJECTS** the magistrate judge's legal conclusion that Centeno's arrest was not supported by probable cause.  Centeno's arrest was constitutional.  Accordingly, the Court need not determine whether the gun, ammunition, and cocaine Centeno seeks to suppress were "fruit" of his arrest because the arrest was not a "poisonous tree."

### 3.  Dog Sniff

The magistrate judge concluded that the firearms-detection dog sniff of the exterior of Centeno's vehicle violated the Fourth Amendment because it was a search that was not supported by probable cause.  (Docket No. 59 at pp. 38-41.)  The magistrate judge then recommended suppressing the physical evidence seized from the Toyota Tundra during the warrant-based search as fruit of the poisonous tree because the unconstitutional dog alert tainted the warrant affidavit, which tainted the warrant, which tainted the seized evidence.  See id. pp. 31-41.

In Illinois v. Caballes, the United States Supreme Court held that a narcotics-detection dog sniff performed on the exterior of a person's car while that person is lawfully detained for a traffic violation is not a search within the meaning of the Fourth Amendment.  543 U.S. 405, 409 (2005).  The court reasoned that "[a]ny intrusion" on the defendant's privacy expectations caused by this sniff "does not rise to the level of a constitutionally cognizable infringement."  Id.  Two decades earlier, in discussing a narcotics-detection dog sniff of a piece of luggage in a public

place, the court explained that it was "aware of no other investigative procedure that is so limited both in the manner in which the information is obtained and in the content of the information revealed by the procedure." United States v. Place, 462 U.S. 696, 707 (1983). First, as to manner, a dog sniff "does not require opening the luggage" or "rummaging through [its] contents," thus ensuring that the owner of the luggage "is not subjected to the embarrassment and inconvenience entailed in less discriminate and more intrusive investigative methods." Id. Second, the information revealed by the sniff is limited because "the sniff discloses only the presence or absence of narcotics, a contraband item." Id.

Although it has been unequivocal in its Fourth Amendment treatment of *narcotics*-detection dog sniffs, the Supreme Court has not addressed whether *firearms*-detection dog sniffs are Fourth Amendment searches that must be supported by probable cause. In fact, the Court is unaware of any other case in any other court that has confronted this issue. It is thus a matter of first impression.

Like narcotics-detection dog sniffs, firearms-detection dog sniffs of vehicles lawfully detained are minimally intrusive; they do not require entering the vehicle or rummaging through it. Both types of sniffs are also limited in that they reveal only the presence or absence of something. The only difference is that narcotics-detection dog sniffs reveal "a substance that no

individual has any right to possess," <u>Caballes</u>, 543 U.S. at 410.
Firearms, unlike narcotics, are not *always* contraband.  And here,
there is no evidence that officers knew at the time they performed
the dog sniff on the Toyota Tundra that Centeno could not lawfully
possess firearms.  Nonetheless, Centeno was lawfully arrested on
suspicion that he had committed a firearms-related crime while in
the Toyota Tundra less than ten minutes before being stopped.
Presence of firearms in the Tundra would likely be related to the
crime for which he was arrested.  Under these circumstances, the
Court cannot conclude that a dog sniff of the exterior of the
Tundra to reveal the presence or absence of firearms "compromise[s]
any legitimate interest in privacy" protected by the Fourth
Amendment.  <u>See id.</u> at 408 (quoting <u>United States v. Jacobsen</u>, 466
U.S. 109, 123, (1984)).  Thus, the Court holds that the dog sniff
of the Toyota Tundra was not a search requiring probable cause.

        The Court therefore **REJECTS** the magistrate judge's legal
conclusion that the dog sniff was an unconstitutional search.
Accordingly, the Court need not determine whether the gun,
ammunition, and cocaine Centeno seeks to suppress were "fruit" of
the sniff because the sniff was not a "poisonous tree."

        In sum, the Court **REJECTS** the magistrate's recommendation
to grant suppression of the physical evidence seized from the
Toyota Tundra.  There is no Fourth Amendment basis for suppressing
the evidence.

### IV.   CONCLUSION

For the foregoing reasons, the Court **ADOPTS IN PART** and **REJECTS IN PART** the magistrate judge's R & R, (Docket No. 59), and **DENIES** defendant Centeno's motion to suppress, (Docket No. 39).

A Scheduling Order will issue.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, April 11, 2016.

<u>s/ Francisco A. Besosa</u>
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE